H. L. BUMP, Trustee in Bankruptcy of Charles Henry Kunsch, Appellant, v. THE DES MOINES ICE & COLD STORAGE COMPANY, Appellee.

**Guardian and ward:** SALE OF PROPERTY: RATIFICATION: ESTOPPEL. Where a guardian intended to convey the entire interest of his ward in certain real estate, the purchaser also believing that he was acquiring such interest, the order of sale and approval was made on that theory and a like proportion of the purchase price set aside and invested for the ward, and upon arriving at his majority he settled with his guardian and consented to his discharge, a former trustee of the ward in bankruptcy, upon discovering that his entire interest had not been thus conveyed could not, after the lapse of ten years from the date of sale, have the ownership of the unconveyed interest adjudged to be in him for the benefit of creditors; as the trustee could have no greater interest than the ward, and he was estopped from claiming any interest by his ratification of the transaction.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

THURSDAY, MARCH 20, 1913.

THE court having sustained defendant's demurrer to the petition in equity, the plaintiff appeals. The material facts are stated in the opinion.—*Affirmed.*

*H. L. Bump and Hunn & Jones,* for appellant.

*J. L. Witmer,* for appellee.

WEAVER, C. J.—The petition as amended alleges a state of facts as follows:

One Henry Kunsch, a resident of Polk county, died August 19, 1892, seised of certain real estate in and about Des Moines. The deceased left a widow and three children (among whom was Charles Henry Kunsch, then a minor), to whom said real estate descended in the proportions provided by our statutes with reference to intestate property. Among the several parcels belonging to said estate was a tract a fractional part of which is the subject of controversy in this action. After the death of Henry Kunsch, a daughter numbered among his heirs died, and her share in the estate of her father was inherited by her mother. The title to the lands left by Henry Kunsch then stood as follows. Five-ninths thereof in the widow, and two-ninths each in her children, Charles Henry Kunsch and Louisa Kunsch Schmidt. In the year 1900, apparently for the purpose of effecting an amicable partition of the lands so derived from Henry Kunsch, the guardian of Charles Henry, with the authority of the court, conveyed his interest in certain of said lands to Louisa Kunsch Schmidt, in consideration of which the latter conveyed her fractional interest in other property, including the tract now in controversy, to her mother and Charles Henry jointly. From the date of such conveyance, as is claimed, the ownership of said tract was vested, six-ninths in the widow and three-ninths in Charles Henry Kunsch.

On January 27, 1902, Mr. Simon Cassidy, the guardian of Charles Henry, filed a petition in the proper court for an order authorizing him to sell the minor's interest in said tract of land. The petition represented that the mother, the owner of the other individual interest in the property, had an advantageous opportunity to sell the same to one H. E. Teach-

out, but such sale could not be consummated unless a conveyance of her son's interest could also be authorized. This the guardian deemed to be desirable for the welfare of his ward, and asked for the necessary authority to make the sale. In his petition he discloses the fact that the entire title is vested in the mother and his ward, and that the purpose of procuring the order is to enable them to convey the entire estate to Teachout, and in his prayer for the order he asks that he have authority to "sell the undivided interest of said minor" in the conveyance of the entire property to said Teachout, upon his receiving from said Teachout, or from the mother of said minor, said minor's share of the purchase price of said property. It appears, however, that in stating to the court the proportionate interests of the mother and son in said property the petition, by evident mistake of counsel, describes the mother as owning seven-ninths and the son as owning two-ninths thereof. Notice of the proceedings was duly served on the ward, informing him that his guardian was making application "for an order to sell your interest, being an undivided two-ninths in the following described property" (describing it). The order appointing a guardian ad litem speaks of the proceeding as one for the sale of the minor's interest in the property, but does not mention his proportionate share therein. The answer of the guardian ad litem speaks of it as a proceeding to sell the minor's interest, "being an undivided two-ninths." The order authorizing the sale speaks of the application as one to sell the minor's interest in the property, and authorizes the guardian to convey to Teachout upon receiving from said purchaser two-ninths of the consideration paid for the entire property.

Pursuant to this order the mother and guardian united in executing and delivering to Teachout a warranty deed for the entire property, which conveyance was returned to the court and approved March 27, 1902. It appears, however, that by an arrangement between the guardian and the mother the ward's share in the proceeds of the sale of this as well

as other lands belonging to the estate of Henry Kunsch was placed or left in the mother's hands, who undertook to account therefor whenever called upon so to do, and secured the said indebtedness by mortgage or deed of other property. In this transaction, notwithstanding the mistake or confusion appearing in the record of the court proceedings above mentioned, the mother and guardian recognized the fact that the ward's true share in the property and in the proceeds thereof was three-ninths or one-third, instead of two-ninths, and by written agreement the mother undertook to account to the guardian for the use of the ward for a full one-third of the price obtained for the said property. The ward arrived at his majority on June 4, 1906, and a settlement of his claim against his mother was arranged between themselves; none of the money or property passing through the hands of the guardian. This settlement being accomplished, the guardian reported the same to the court, and petitioned for his discharge from the trust. To this proceeding the ward appeared in person, and filed a formal voucher or consent that the report be approved, the guardian discharged, and his bond exonerated, whereupon an order was entered to that effect. There was no showing or allegation that the approval of the guardian's final settlement has ever been appealed from or in any manner questioned or set aside.

The petition herein, which was filed April 20, 1911, recites that Charles Henry Kunsch has been adjudged a bankrupt, and that plaintiff is the duly elected and qualified trustee of said bankrupt's estate, and after alleging the facts, and setting forth the records hereinbefore mentioned, avers that the guardian's sale and deed had the effect to convey to Teachout no more than the undivided two-ninths of said property, leaving the ward still vested with the ownership of an undivided one-ninth therein; that said one-ninth interest has never been sold or conveyed away, and is liable to be subjected to the payment of the debts of said Charles Henry Kunsch; that the property has been conveyed by Teachout

to the defendant herein; and that a division or partition of the land without sale is impracticable. Upon the foregoing showing, plaintiff asks that he, as trustee, be adjudged the owner in fee of the one-ninth interest in the lands in question, and that a referee be appointed, with direction to sell said lands and pay over to him one-ninth of the proceeds of such sale. To this petition the defendant demurred, on the general ground that the allegations thereof do not entitle the plaintiff to the relief demanded. The court sustained the demurrer, and plaintiff declining to further amend, and electing to stand upon his petition, the action was dismissed, and judgment entered against plaintiff for costs.

Counsel for appellant state their principal contention as follows. The real question in this case is. Did Simon Cassidy as guardian convey any greater interest of his ward's property than that part described in the application to sell, notice of hearing, and order of sale?

It is true this is one phase of the real question at issue: but we shall get a little nearer the exact point if we put the inquiry as follows: Did Charles Henry Kunsch, after the sale and conveyance by his guardian, and after the proceedings and transactions hereinbefore related, have remaining in said lands any right, title, or interest which he could assert in law or equity against the grantee of the guardian, or which could be subjected by his creditors or trustee to the payment of his debts? This question, we are very clear, must be answered in the negative. The law is properly jealous of the rights of infants under guardianship, and a ward cannot be divested of his property without due observation of the procedure which the statute provides for that purpose; but the rules established by statute and precedent for the protection of the ward in his rights are not to be so perverted as to permit the robbery of others for his benefit, or for the benefit of his creditors. It is perfectly clear that the guardian undertook to sell and convey, and believed he did sell and convey, all the interest of his ward in the land. It is equally

clear that Teachout undertook to purchase, and believed that he had purchased and obtained, the entire title to all the land, including the ward's title and interest therein. The court made the order and approved the sale on that theory. It is true, however, that in those parts of the record where it is attempted to state the ward's proportionate share in the land it is spoken of as a two-ninths part, instead of three-ninths, and, if this were all, the court might feel obliged to say that the consequences of the mistake must be borne by the purchaser; for if the guardian obtained authority to sell a two-ninths interest only, and in fact conveyed two-ninths only, the remaining ninth part would of necessity remain undivested in the ward, and, unless by some act or omission of his own after arriving at majority he estops himself from asserting such title, he or his grantee or trustee may insist thereon.

But this record discloses more than the mistake in the description of his interest in the land. It appears that, although counsel conducting the proceedings were of the mistaken impression that the ward's interest was but two-ninths, neither the guardian nor the mother of the ward were deceived in that respect, though it is evident they did not discover the error of counsel in framing the papers. They proceeded on the correct theory that the ward was the owner of a one-third interest in the property, and set aside one-third of the selling price of the land to his use and benefit. This one-third of the price was loaned to the mother upon real estate security. On his arrival at majority, Charles Henry Kunsch saw fit to recognize the validity of this transaction, made settlement with his mother, and consented to the discharge of his guardian. Had he not been adjudged a bankrupt, and were now to come into court in his own right, more than ten years after the sale, and more than ten years after the full selling price of his one-third interest had been set aside to his own use, and five years after he had arrived at his majority and received said one-third of the consideration of the sale, which he had converted to his own use or still

retains in his pocket, and ask that all these proceedings and transactions be ignored, and he be adjudged still the rightful owner of a one-ninth part of such property, his demand would be promptly and deservedly rejected as against good conscience and inconsistent with equity and fair dealing. The trustee occupies no better or stronger position.

We think it is unnecessary to enter into the question of the relative rights which might have been asserted by the parties, had the mistaken description of the ward's share in the property not been cured by his own act or omission after arriving at an age to act in his own behalf. If the mistake was fatal to a complete conveyance of his interest, he could have refused to recognize the validity of the proceedings, refused to accept the price received for and credited to him, and insisted upon his ownership of the remaining one-ninth part. This he did not do. With the full price of the entire three-ninths in his possession, and presumably with a full knowledge of all the facts in the premises, he elected to retain the money so received, and left the entire property in the hands of the purchaser, to be used and improved under the belief that the deed of the guardian and mother had conveyed the entire title, for five years after becoming of full age. If laches, or the affirmative or positive action of a party, is ever sufficient to close his mouth against the assertion of a real or apparent right, it is not easy to imagine a more appropriate application of the rule than is here presented. If the mistake of which mention is made did create such a defect, and there was any apparent right or title left in the ward, it was entirely competent for the mother, when her son attained majority, to make settlement with him and pay him on the basis of his full three-ninths interest; and if he consented to receive it, or obtained credit therefor in such settlement, he would clearly be estopped to insist upon such claim of title, even though no formal conveyance had ever been executed or delivered.

It follows, from the foregoing discussion, that the ruling

of the trial court must be sustained. Other questions have been discussed—whether the statute of limitations has intervened; whether a general demurrer is sufficient to raise the question of the statute; whether the claim asserted by the trustee is a collateral or direct attack upon the validity or effect of the sale proceedings; whether the mistake of the description of the ward's interest in the land affected the jurisdiction of the court; and whether the mistake is of such character that, in view of the entire record and the evident purpose to sell and convey the entire title and interest of the ward, and in view of the fact that he was credited with and paid the full one-third of the price, the court may not give effect to the clear intent, and sustain the deed given to Teachout as a complete conveyance of such title. In view of our conclusion, already announced, it is unnecessary for us to prolong this opinion to consider or decide these questions.

For reasons stated, the court correctly sustained the demurrer; and the judgment against the plaintiff for costs is *Affirmed.*